IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:07-CR-62-D
No. 4:11-CV-68-D

| | | |
|---|---|---|
| MITCHELL SWAIN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

On June 1, 2011, Mitchell Swain ("Swain"), a federal inmate proceeding pro se, filed an amended motion to vacate and set aside his 324-month sentence pursuant to 28 U.S.C. § 2255 [D.E. 91]. On July 19, 2011, the United States ("government") moved to dismiss Swain's section 2255 motion [D.E. 94]. On July 20, 2011, pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified Swain about the motion to dismiss, the consequences of failing to respond, and the response deadline [D.E. 96]. On August 26, 2011, Swain responded in opposition to the government's motion to dismiss [D.E. 99]. As explained below, the court grants the government's motion to dismiss.

I.

On October 17, 2007, a grand jury in the Eastern District of North Carolina indicted Swain for conspiracy to distribute and to possess with the intent to distribute more than 50 grams of cocaine base (crack) and a quantity of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and possession with the intent to distribute more than 50 grams of cocaine base (crack) and a quantity of cocaine, in violation of 21 U.S.C. § 841(a)(1). See [D.E. 1] 1. On March 26, 2008, the grand jury

issued a superseding indictment, charging Swain with conspiracy to distribute and to possess with the intent to distribute more than 50 grams of cocaine base (crack) and a quantity of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846; possession with the intent to distribute more than 50 grams of cocaine base (crack) and a quantity of cocaine, in violation of 21 U.S.C. § 841(a)(1); possession with the intent to distribute a quantity of cocaine base (crack) and a quantity of cocaine, in violation of 21 U.S.C. § 841(a)(1); and, possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924. See [D.E. 40] 1–2.

On May 5, 2008, the court arraigned several defendants, including Swain. See [D.E. 44]. The court asked all defendants present, including Swain, whether "any defendant . . . has taken any drugs, medicine, pills, or drunk any alcoholic beverages in the last 24 hours." Arraignment Tr. [D.E. 82] 12. Swain did not indicate that he had. See id. 12. The court then asked whether "any defendant . . . does not understand what is happening [in court] today." Id. Swain did not indicate that he did not understand. See id. Next, the court asked each lawyer representing a defendant whether the lawyer had "any doubt or question about their client's competence to plead." Id. 12–13. Swain's attorney, Jennifer Haynes Rose ("Rose"), voiced no concerns. See id. 13. The court then advised Swain and the other defendants about all of their rights under the Constitution and laws of the United States and the consequences of pleading guilty. See id. 2–13; cf. Fed. R. Crim. P. 11(b).

After Swain was sworn, the court asked Swain specifically whether he had heard all of the questions the court asked the defendants as a group. Arraignment Tr. 14. Swain, speaking under oath, stated that he did. Id. Swain did not indicate that he wished to change his answer to any of the court's earlier questions. See id. Specifically, Swain provided no indication that he was presently suffering from any deficient mental state, that he was presently under the influence of drugs, alcohol, or medications, or that he was unable to hear and understand the proceedings. See

2

id. The court then asked Rose whether she had any reason to believe that Swain was not competent to proceed with his arraignment. Id. Rose did not. Id. The court next asked the Assistant United States Attorney ("AUSA") whether he had any reason to believe that Swain was not competent to proceed with his arraignment. Id. The AUSA did not. Id. 15. Based on Swain's, Rose's, and the AUSA's answers to the court's questions, and based on the court's observations of Swain, the court found and announced that Swain was competent to proceed with his arraignment. Id.

Having found that Swain was competent to proceed, the court conducted a Rule 11 colloquy. See id. 15–27. The court first advised Swain of the charges against him and of the potential penalties Swain faced. See id. 15–18. Swain stated, under oath, that he understood the charges against him and the potential penalties he faced. Id. 18. The court then asked Swain if he understood the consequences of pleading guilty, as previously described by the court. Id.; see id. 3–12. Swain stated, under oath, that he understood. Id. 18. The court informed Swain that "if [he] went to trial . . . , the government would have to prove everything [the indictment] says . . . through competent evidence and beyond a reasonable doubt." Id. 19. Swain stated, under oath, that he understood. Id. The court also asked Swain whether he understood that by pleading guilty, he would waive his right to require the government to prove every element of the charged offenses beyond a reasonable doubt. See id. 4, 18–19. Swain, under oath, stated that he understood. Id. 19. The court then discussed Swain's plea agreement, making special note of the appellate and collateral-attack waiver provision contained in paragraph 2(c). See id. 20–21; see also [D.E. 45] ¶ 2(c). Swain stated that he understood the waiver provision. Arraignment Tr. 21.

The court asked Swain several questions regarding whether Swain was knowingly and voluntarily pleading guilty. See id. 18–23. Swain represented under oath that his guilty plea was knowing and voluntary. See id. Swain then pleaded guilty, pursuant to his written plea agreement,

3

to conspiring to distribute and to possess with the intent to distribute more than 50 grams of cocaine base (crack) and a quantity of cocaine. Id. 23-24; see [D.E. 45] ¶¶ 3-4.

The court then received a proffer from the government as to what the evidence would have shown had Swain gone to trial. See Arraignment Tr. 24-25. After the government summarized the evidence, the court found and announced that an independent factual basis supported Swain's guilty plea. Id. 25. The court then found and announced that Swain's guilty plea was freely and voluntarily entered, and the court accepted the guilty plea. Id. 25-26.

On February 25 and 26, 2009, the court held a sentencing hearing in Swain's case. See [D.E. 73-74]. The court denied a motion by Swain's newly-appointed attorney Samuel Randall ("Randall") to continue Swain's sentencing hearing. See Sentencing Tr. [D.E. 83] 3-4. After Swain was sworn, the court again found that Swain was competent. Id. 4-5. The court then asked Swain and Randall whether they had received and reviewed copies of the Presentence Report ("PSR"). Id. 6. Both affirmed that they had. Id. After hearing from Randall, Swain, and the AUSA, and after considering all relevant evidence and factors under 18 U.S.C. § 3553(a), the court sentenced Swain to 324 months' imprisonment for his conspiracy conviction, and dismissed the remaining counts in Swain's indictment and superseding indictment. See [D.E. 74, 78]; see also Sentencing Tr. 127-40.

Swain appealed his sentence, arguing that the court abused its discretion and violated Swain's right to counsel when it denied Swain's motion to continue his sentencing. See United States v. Swain, 367 F. App'x 417, 417 (4th Cir. 2010) (per curiam) (unpublished). The Fourth Circuit rejected the argument and affirmed Swain's sentence. Id. at 418.

On May 5, 2011, Swain filed a section 2255 motion without the required forms. See [D.E. 88-89]. On June 1, 2011, Swain filed an amended section 2255 motion [D.E. 91] and a supporting memorandum [D.E. 92]. In his amended section 2255 motion, Swain raises four claims: (1) Randall

4

provided ineffective assistance of counsel by failing to investigate the factual basis for the PSR, Mem. Supp. Mot. Vacate 5–7; (2) Randall provided ineffective assistance of counsel by failing to object to factual errors in the PSR, id. 8–12; (3) Swain did not knowingly and voluntarily plead guilty because of Rose's ineffective assistance in failing to inform Swain about particular sections of the Sentencing Guidelines, id. 12–16; and (4) Rose and Randall provided ineffective assistance by failing to assist Swain in cooperating with the government. See id. 16–19. The government filed a motion to dismiss Swain's amended section 2255 motion.

II.

In analyzing a motion to dismiss for failure to state a claim upon which relief can be granted, a court must determine whether the complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562–63, 570 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009); see also Iqbal, 556 U.S. at 678–79. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79.

The standard used to evaluate the sufficiency of the pleading is flexible, "and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quotation omitted). Erickson, however, does not "undermine [the] requirement that a pleading contain 'more than labels and conclusions.'" Giarratano 521 F.3d at 304 n.5 (quoting Twombly, 550 U.S. at 555); see Iqbal,

5

556 U.S. at 678–79; Coleman, 626 F.3d at 190; Nemet Chevrolet, 591 F.3d at 255–56; Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).

In his section 2255 motion, Swain raises four claims of ineffective assistance of counsel. "The Sixth Amendment entitles criminal defendants to the effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." Bobby v. Van Hook, 558 U.S. 4, 7 (2009) (per curiam) (quotations omitted); see Strickland v. Washington, 466 U.S. 668, 687–88 (1984). A defendant is entitled to effective assistance of counsel when pleading guilty, and a guilty plea that, due to counsel's ineffective assistance, was involuntary or unknowing cannot stand. See Hill v. Lockhart, 474 U.S. 52, 56–57 (1985); Fields v. Att'y Gen., 956 F.2d 1290, 1296–97 & n.17 (4th Cir. 1992). Likewise, "sentencing is a critical stage of trial at which a defendant is entitled to effective assistance of counsel, and a sentence imposed without effective assistance must be vacated and reimposed to permit facts in mitigation of punishment to be fully and freely developed." United States v. Breckenridge, 93 F.3d 132, 135 (4th Cir. 1996); see Glover v. United States, 531 U.S. 198, 203–04 (2001). An individual alleging ineffective assistance of counsel must demonstrate that counsel's representation fell below an objective standard of reasonableness and that counsel's deficient performance prejudiced the individual. See Strickland, 466 U.S. at 687–88, 694; see also Missouri v. Frye, 132 S. Ct. 1399, 1409–10 (2012); Lafler v. Cooper, 132 S. Ct. 1376, 1384–85 (2012); Hill, 474 U.S. at 57; Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (en banc).

As for Strickland's first requirement, "the proper standard for attorney performance is that of reasonably effective assistance." Strickland, 466 U.S. at 687. When it considers whether an individual has satisfied this requirement, a reviewing court must judge counsel's conduct against "an objective standard of reasonableness." Van Hook, 558 U.S. at 7 (quotation omitted); see

6

Strickland, 466 U.S. at 688. Counsel necessarily makes numerous tactical decisions during the various phases of a criminal proceeding, including sentencing. See Strickland, 466 U.S. at 689; see also Wiggins v. Smith, 539 U.S. 510, 521–23 (2003). Thus, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689; see Gray v. Branker, 529 F.3d 220, 229 (4th Cir. 2008).

As for Strickland's second requirement, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691; see Van Hook, 558 U.S. at 12–13. To establish prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. When a defendant alleges ineffective assistance of counsel in connection with a guilty plea, he must show that, but for counsel's error, there is a reasonable probability that he would have gone to trial instead of pleading guilty. See Fields, 956 F.2d at 1297; cf. Frye, 132 S. Ct. 1409–10. Similarly, when a defendant alleges ineffective assistance of counsel at sentencing, he must show that, but for counsel's error, there is a reasonable probability that he would have received a shorter sentence. See Glover, 531 U.S. at 203–04; see also Lafler, 132 S. Ct. at 1386.

"[A] court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." Strickland, 466 U.S. at 695. In analyzing an ineffective assistance of counsel claim, a court may rely on its own familiarity with the case. See Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977).

7

In his first claim of ineffective assistance of counsel, Swain argues that Randall failed to interview witnesses who would have offered testimony beneficial to Swain at his sentencing hearing. Mem. Supp. Mot. Vacate 5–7. At the sentencing hearing, the government's witness Jerrold Heckstall ("Heckstall") testified that he met Swain at Swain's uncle's house and sold Swain crack cocaine there over a five-month period. Sentencing Tr. 77–82. Swain contends that had Randall interviewed Swain's uncle Ronnie Swain, Randall would have been able to call Ronnie Swain to testify that Heckstall had never been to Ronnie Swain's house. Mem. Supp. Mot. Vacate 5–6; Resp. Opp'n Mot. Dismiss 2–3. Additionally, at the sentencing hearing, the court attributed $12,296.82 seized pursuant to a search warrant to Swain as drug proceeds. See Sentencing Tr. 126. Swain contends that Randall failed to interview a witness who would have offered testimony about a legitimate source of some of the money. Mem. Supp. Mot. Vacate 6; Resp. Opp'n Mot. Dismiss 3.

Although "[c]ounsel must ordinarily investigate possible methods of impeaching prosecution witnesses," defense counsel is not required "to undertake interviews . . . with potential witnesses where counsel is familiar with the substance of their testimony." Huffington v. Nuth, 140 F.3d 572, 580 (4th Cir. 1998). Swain does not allege that Ronnie Swain would have offered any exculpatory or mitigating testimony beyond contradicting Heckstall's testimony that Heckstall met Swain at Ronnie Swain's house. Randall vigorously cross-examined Heckstall and pointed out bias and inconsistencies within Heckstall's testimony. Sentencing Tr. 98–107. Randall's decision not to interview or call Ronnie Swain as a witness, knowing the limited nature of Ronnie Swain's potential testimony and its marginal impeachment value, was a reasonable, tactical decision. Randall's decision is supported by evidence that Ronnie Swain was a "crackhead," who "tested the drugs" for Swain. Id. 79; see id. 81–82. Any impeachment testimony that Ronnie Swain may have offered would not have altered the court's finding that Heckstall's testimony was reliable or the drug weight

8

ultimately attributed to Swain. See id. 124–25. Thus, Swain has failed to allege a deficiency in Randall's representation or a reasonable probability that Swain's sentence would have been shorter had Randall interviewed Ronnie Swain and called him to testify.

Regarding Swain's allegation that Randall failed to investigate a legitimate source of the money that the court attributed to drug proceeds and converted into a drug weight equivalent, Swain has failed to allege or show that his sentence would have been any shorter had Randall investigated the origin of the money. At the sentencing hearing, Randall argued that the money that law enforcement found should not be attributed to drug weight, and that doing so might result in double counting. Id. 71–72, 119. The court considered Randall's argument and concluded that converting the money to a crack cocaine equivalent weight did not affect Swain's offense level or guidelines range. Id. 126. Thus, Swain has not shown any ineffectiveness or prejudice. Consequently, Swain's first claim fails.

In his second claim of ineffective assistance of counsel, Swain argues that Randall failed to object to factual errors in the PSR. Mem. Supp. Mot. Vacate 8–12. Specifically, Swain argues that Randall should have objected to the PSR's conversion of money into a crack cocaine equivalent and to the drug calculation based on Heckstall's testimony. However, as discussed, Randall objected to the conversion of money into drug weight. Sentencing Tr. 71–72, 119. Furthermore, Randall objected to the drug amounts Heckstall claimed to have sold to Swain and vigorously challenged Heckstall's reliability. Id. 98–107, 119–21. The court overruled these objections. Id. 125–26. Therefore, Swain fails to allege any deficient performance by Randall or any resulting prejudice, and Swain's second claim fails.

In his third claim of ineffective assistance of counsel, Swain argues that he did not knowingly and voluntarily plead guilty because Rose did not inform Swain about particular sections of the

9

Sentencing Guidelines and their potential impact on his sentence. See Mem. Supp. Mot. Vacate 12–16. Swain claims that he would not have pleaded guilty had he known the court would calculate the guidelines sentence range based on his relevant conduct and not merely the drug weight Swain pleaded guilty to conspiring to distribute.

Even if defense counsel erroneously advised or failed to advise Swain regarding how his sentence would be calculated, the court corrected any misinformation or deficiency at the Rule 11 hearing. The court repeatedly informed Swain about the importance of the PSR, and that the conduct described in the PSR would be used by the court in determining Swain's sentence. Arraignment Tr. 6, 8–9. The court asked Swain if Swain heard and understood the court's instructions regarding the PSR. Id. 14. Swain answered that he had. Id. The court informed Swain that for the conspiracy charged in count one of Swain's indictment the minimum term of imprisonment was ten years and the maximum term was life. Id. 16. The court asked Swain if he understood the maximum penalty authorized by law. Id. 18. Swain answered that he did. Id. The court asked if Swain understood that his attorney's calculation of the advisory guidelines range would only be an estimate, and that the court would determine the guidelines range. Id. 19. Swain responded that he did. Id. The court again asked Swain if he understood that the court would determine the appropriate sentence. Id. Swain responded that he did. Id. The court then asked Swain if he understood that, if the court accepted his plea, the court could impose a sentence including the maximum penalty authorized by law. Id. 21. Swain responded that he understood. Id. The court asked Swain if Swain understood that he would not be able to withdraw his guilty plea even if the court were to impose the maximum sentence. Id. 21. Swain responded that he did. Id. 22. The court again asked Swain if he understood the maximum penalty authorized by law. Id. Swain responded affirmatively. Id.

10

"Absent clear and convincing evidence" that his representations were untruthful or involuntary, Swain "is bound by the representations he [made] under oath during [the] plea colloquy." Fields, 956 F.2d at 1299; see Blackledge, 431 U.S. at 74–75; Little v. Allsbrook, 731 F.2d 238, 239 n.2 (4th Cir. 1984). Swain has not shown that his answers were untruthful or involuntary, and therefore these representations are conclusive. Swain represented that he understood he faced a sentence of ten years to life in prison with the exact length to be determined by the court based on facts in his PSR, and that he should not rely on counsel's explanation of the guidelines. Therefore, Swain's claim that he would not have pleaded guilty had defense counsel fully explained the Sentencing Guidelines fails. See United States v. Evans, 127 F.3d 1100, 1997 WL 657131, at *1 (4th Cir. 1997) (per curiam) (unpublished table decision); United States v. Lambey, 974 F.2d 1389, 1395 (4th Cir. 1992) (en banc). Accordingly, Swain's third claim fails.

In his fourth claim for ineffective assistance of counsel, Swain argues that defense counsel failed to assist his cooperation with the government and thereby denied Swain an opportunity to obtain a motion for a downward departure under U.S.S.G. § 5K1.1. See Mem. Supp. Mot. Vacate 16–19. Assuming that defense counsel's failure to assist Swain in cooperating was objectively unreasonable, Swain has not shown "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Rather, Swain's claim is purely speculative. No evidence suggests that Swain had any information of interest to the government, that any information offered would have risen to the level of substantial assistance, that the government would have moved for a downward departure under section 5K1.1, or that his sentence ultimately would have been different. See Zandi v. United States, 460 F. App'x 51, 53 (2d Cir. 2012) (per curiam) (unpublished); Sands v. United States, Nos. 06-20044-3-CM, 10-2413-CM, 2010 WL 4682295, at *2 (D. Kan. Nov. 10, 2010) (unpublished); Rojas v. United States,

11

No. 00 Civ. 6501(LAK), 98 Cr. 370(LAK), 2001 WL 50952, at *1 (S.D.N.Y. Jan. 22, 2001) (unpublished). Because Swain has not shown any prejudice resulting from the alleged deficient performance, his final claim fails.

After reviewing the claims presented in Swain's section 2255 motion, reasonable jurists would not find the court's treatment of any of Swain's claims debatable or wrong, and none of the issues are adequate to deserve encouragement to proceed further. Accordingly, the court denies a certificate of appealability. See 28 U.S.C. § 2253(c).

III.

In sum, the court GRANTS the government's motion to dismiss [D.E. 94] and DISMISSES Swain's amended section 2255 motion [D.E. 91]. The court DISMISSES AS MOOT Swain's original section 2255 motion [D.E. 88]. The court DENIES a certificate of appealability.

SO ORDERED. This 9 day of May 2013.

JAMES C. DEVER III
Chief United States District Judge