IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:07-CR-62-D

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| MITCHELL SWAIN, ) | |
| ) | |
| Defendant. ) | |

On May 16, 2019, Mitchell Swain ("Swain") moved pro se for relief under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222 [D.E. 128]. On December 4, 2020, Swain moved through counsel for relief under the First Step Act [D.E. 136]. On December 18, 2020, the government responded in opposition [D.E. 138]. On December 29, 2020, Swain replied [D.E. 139]. On January 28, 2021, the court denied Swain's motions [D.E. 143]. On February 1, 2021, Swain appealed [D.E. 146]. On September 14, 2022, the United States Court of Appeals for the Fourth Circuit vacated and remanded this court's denial of Swain's motions [D.E. 154–55]. See United States v. Swain, 49 F.4th 398 (4th Cir. 2022). On November 7, 2022, Swain submitted a new sentencing memorandum for the court's consideration and requested a 180-month sentence [D.E. 161]. The government has not taken a position concerning Swain's sentence on remand. As explained below, the court grants Swain's motions for reduction of sentence and reduces Swain's sentence to 288 months' imprisonment.

I.

On May 5, 2008, pursuant to a written plea agreement, Swain pleaded guilty to conspiracy to distribute and possess with intent to distribute more than 50 grams of cocaine base (crack) and a

quantity of cocaine. See [D.E. 44, 45, 82]. On February 25 and 26, 2009, the court held Swain's sentencing hearing. See [D.E. 73, 74, 78, 83]. At the hearing, the court adopted the facts set forth in the Presentence Investigation Report ("PSR"), [D.E. 145], and resolved Swain's objections to the PSR. See Fed. R. Crim. P. 32(i)(3)(A)–(B); Sent. Tr. [D.E. 83] 5–127. The court calculated Swain's total offense level to be 39, his criminal history category to be III, and his advisory guideline range to be 324 to 405 months' imprisonment. See Sent. Tr. 5–127. After thoroughly considering all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Swain to 324 months' imprisonment. See id. at 136–42. The court also announced that it would impose the same sentence as an alternative variant sentence if it had miscalculated the advisory guideline range. See id. at 141. Swain appealed. On February 25, 2010, the Fourth Circuit affirmed this court's judgment. See United States v. Swain, 367 F. App'x 417, 417–18 (4th Cir. 2010) (per curiam) (unpublished).

On April 29, 2011, Swain moved to vacate and set aside his 324-month sentence under 28 U.S.C. § 2255. See [D.E. 88]. On June 1, 2011, Swain amended his section 2255 motion. See [D.E. 91]. On July 19, 2011, the United States moved to dismiss Swain's section 2255 motion. See [D.E. 94]. On August 26, 2011, Swain responded in opposition. See [D.E. 99]. On May 9, 2013, the court granted the government's motion to dismiss and denied a certificate of appealability. See [D.E. 102]. Swain appealed. On January 23, 2014, the Fourth Circuit dismissed Swain's appeal. See United States v. Swain, 550 F. App'x 172, 173 (4th Cir. 2014) (per curiam) (unpublished).

On December 7, 2015, Swain moved for a sentence reduction under 18 U.S.C. § 3582(c)(2), U.S.S.G. § 1B1.10, and Amendment 782. See [D.E. 117]. The court calculated Swain's new advisory guideline range to be 262 to 327 months' imprisonment. See [D.E. 126] 1. Swain requested a 262-month sentence. See id. On July 20, 2018, after considering the new advisory guideline range and the entire record, the court denied Swain's motion. See id. at 2–3.

2

On August 3, 2010, Congress enacted the Fair Sentencing Act of 2010 ("Fair Sentencing Act"), Pub. L. No. 111-220, 124 Stat. 2371, 2372 (codified as amended at 21 U.S.C. § 801, et seq.). Section 2 of the Fair Sentencing Act reduced statutory penalties by increasing the drug quantities necessary to trigger certain statutory minimums and maximums. For example, the amount of cocaine base (crack) necessary to trigger a 5 to 40 year sentence increased from 5 to 28 grams. Likewise, the amount of cocaine base (crack) necessary to trigger a 10 year to life sentence increased from 50 grams to 280 grams. See id. § 2, 124 Stat. at 2372.

On December 21, 2018, the First Step Act took effect. See First Step Act, 132 Stat. at 5249. The First Step Act makes the Fair Sentencing Act's reductions in mandatory minimum sentences apply retroactively to defendants who committed their "covered offense" of conviction before August 3, 2010. See id. § 404(a), 132 Stat. at 5222. Section 404(a) defines "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act . . . that was committed before August 3, 2010." Id. Under the First Step Act, a "court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." Id. § 404(b), 132 Stat. at 5222. A court that modifies a sentence under the First Step Act does so under 18 U.S.C. § 3582(c)(1)(B), which allows a court to "modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); see United States v. Lancaster, 997 F.3d 171, 174 (4th Cir. 2021); United States v. Chambers, 956 F.3d 667, 671 (4th Cir. 2020), abrogated on other grounds by Concepcion v. United States, 142 S. Ct. 2389 (2022); United States v. Wirsing, 943 F.3d 175, 183 (4th Cir. 2019). If a defendant qualifies, a court may consider a motion for a reduced sentence only if the defendant did not previously receive a reduction pursuant to the Fair Sentencing Act and did not have a motion

3

under the First Step Act denied "after a complete review of the motion on the merits." First Step Act § 404(c), 132 Stat. at 5222.

When a defendant moves for relief under the First Step Act concerning a covered offense, the court proceeds in two steps. First, the court recalculates the defendant's advisory guideline range "only to the extent it adjusts for the Fair Sentencing Act." United States v. Troy, 64 F.4th 177, 184 (4th Cir. 2023) (quotation omitted); see Concepcion, 142 S. Ct. at 2396, 2402 n.6 (the First Step Act does not permit a district court to recalculate a defendant's benchmark advisory guideline range "in any way other than to reflect the retroactive application of the Fair Sentencing Act"); United States v. Smith, 75 F.4th 459, 465 (4th Cir. 2023) (same). "[T]he First Step Act directs district courts to calculate the Guideline range as if the Fair Sentencing Act's amendments had been in place at the time of the offense." Concepcion, 142 S. Ct. at 2402 n.6. "That Guideline range anchors the sentencing proceeding." Id. (quotation omitted). As the Fourth Circuit instructed in Smith (which the court decided after Swain), at step one a district court should use the drug quantity table in the 2011 Guidelines Manual containing the Fair Sentencing Act amendments. See Smith, 75 F.4th at 465 (discussing U.S. Sent'g Guidelines Manual app. C, amend. 750, 759 (U.S. Sent'g Comm'n 2011)); United States v. Reed, 58 F.4th 816, 818 (4th Cir. 2023).

Second, the court "may (and when raised by the parties, must) consider other legal and factual changes when deciding whether to impose a reduced sentence," such as postsentencing conduct. Troy, 64 F.4th at 184; see Concepcion, 142 S. Ct. at 2396, 2402 n.6; Smith, 75 F.4th at 465. "Nothing in ... section [404(c) of the First Step Act]," however, "shall be construed to require a court to reduce any sentence pursuant to this section." First Step Act § 404(c), 132 Stat. at 5222; see, e.g., Swain, 49 F.4th at 400; United States v. Gravatt, 953 F.3d 258, 261 (4th Cir. 2020); Wirsing, 943 F.3d at 184–86. The court "must consider the sentencing factors set forth in 18 U.S.C.

4

§ 3553(a) in section 404 proceedings." Swain, 49 F.4th at 400; see Troy, 64 F.4th at 185.

In 2021, when the court denied Swain's motions, this court did not have the benefit of Concepcion or the benefit of Troy and Smith (which the Fourth Circuit decided after Swain). In 2021, the United States Probation Office opined that Swain's proper advisory guideline range was 262 to 327 months based on a total offense level 37 and a criminal history category III. See [D.E. 140] 2. Probation based this opinion on the retroactive application of the Fair Sentencing Act. See id. In 2021, Swain argued that the court should use the drug quantity table in the 2021 Guidelines Manual and calculate Swain's advisory guideline range as 210 to 262 months. See [D.E. 136] 4 ("[T]oday, 6,264 grams of crack cocaine corresponds to a base-offense level of 34, rather than 36, and a guideline range of 210 to 262 months."). In 2021, the court "assume[d] without deciding that Swain's new advisory guideline range is 210 to 262 months' imprisonment based on a total offense level 35 and a criminal history category III." [D.E. 143] 4. In light of Concepcion, Troy, and Smith, the court's assumption was not correct. Binding precedent now prohibits a district court from recalculating "a movant's benchmark Guidelines range in any way other than to reflect the retroactive application of the Fair Sentencing Act." Concepcion, 142 S. Ct. at 2402 n.6. Binding precedent requires the court to use the drug quantity table in the 2011 Guidelines Manual (including the amendments passed in response to the Fair Sentencing Act) to calculate Swain's advisory guideline range. See Smith, 75 F.4th at 465; Troy, 64 F.4th at 184.

At step one, in accordance with Concepcion, Troy, and Smith, the court calculates Swain's new advisory guideline range to be 262 to 327 months' imprisonment based on a total offense level 37 and a criminal history category III. At Swain's sentencing hearing, the court found that Swain was conservatively accountable for approximately 6,264 grams of cocaine base (crack). See Sent. Tr. 123–27. The 2011 Guidelines Manual with the applicable Fair Sentencing Act amendments

5

prescribes a base offense level 36 for that drug weight. See U.S.S.G. § 2D1.1(c)(3) (2011). Swain received a two-level enhancement for possessing a dangerous weapon (i.e., firearm) and a two-level enhancement for creating a substantial risk of death or serious bodily injury to another person in the course of fleeing from law enforcement. See PSR ¶¶ 46, 49; Sent. Tr. 7, 50–51, 73. Swain received a three-level reduction for acceptance of responsibility. See PSR ¶ 52; Sent. Tr. 7. Accordingly, Swain's new total offense level is 37. Accord [D.E. 140] 2; cf. [D.E. 136] 4; [D.E. 161] 6.[1] Swain retains a criminal history category III. See PSR ¶ 54; [D.E. 140] 2; [D.E. 161] 6.

At step two, the court has completely reviewed the entire record, Swain's arguments, the new advisory guideline range, and all relevant factors under 18 U.S.C. § 3553(a). See Chavez-Mesa v. United States, 138 S. Ct. 1959, 1966–68 (2018); Pepper v. United States, 562 U.S. 476, 490–93 (2011); Smith, 75 F.4th at 464–66; Troy, 64 F.4th at 184; Chambers, 956 F.3d at 671–75; United States v. May, 783 F. App'x 309, 310 (4th Cir. 2019) (per curiam) (unpublished). Turning to the section 3553(a) factors, Swain engaged in egregious offense conduct. Swain dealt a large quantity of drugs between March 2004 and June 2007. See Sent. Tr. 7–109, 123–27, 136–40; PSR ¶¶ 7–12. Swain also conspired with others to distribute a very large amount of cocaine base (crack), some cocaine, and marijuana. Swain also possessed a stolen firearm in furtherance of his drug trafficking activities. See PSR ¶¶ 9, 11. Moreover, on June 27, 2007, when officers attempted to arrest Swain as part of a buy-bust operation, Swain fled in his van. During his flight, Swain led officers on a high-speed chase at about 2:30 p.m. amidst medium traffic. While fleeing, Swain drove at speeds over 80 miles per hour, used his van as a weapon, discarded some of the cocaine out the window of his van, collided with a police vehicle, refused to comply with officers' orders, and forced officers

---

[1] In light of Concepcion, Smith, and Troy, the court rejects Swain's argument that it should use the drug quantity table in the 2021 Guidelines Manual at step one. See [D.E. 161] 6.

6

to wrestle him from his van and tase him to get him to comply. See Sent. Tr. 14–26; PSR ¶ 7.

As for Swain's history and characteristics, Swain is a violent recidivist with convictions for larceny (two counts), injury to personal property (three counts), simple assault, resisting or obstructing a public officer, driving with a revoked license, resisting a public officer (two counts), possession with intent to sell and deliver cocaine, maintaining a vehicle, dwelling, or place for controlled substances, and possession of a controlled substance on prison or jail premises. See PSR ¶¶ 14–24. Swain has behaved poorly on supervision and routinely had terms of supervision revoked. See id. at ¶¶ 14–18. Outside of prison, Swain has a spotty work history. See id. at ¶¶ 40–42.

Swain contends that a 180-month sentence is proper because such a sentence aligns with the weight of the drugs actually seized from Swain. See [D.E. 161] 5, 7. The court rejects Swain's argument. Swain pleaded guilty to a conspiracy to distribute and possess with intent to distribute cocaine base (crack) and cocaine. See PSR ¶¶ 1, 5. Swain is accountable for any drugs that were within the scope of the conspiracy, in furtherance of the conspiracy, and reasonably foreseeable in connection with the conspiracy. See, e.g., U.S.S.G. § 1B1.3(a)(1)(B); United States v. Brooks, 524 F.3d 549, 555–61 (4th Cir. 2008). Thus, the amount of drugs seized from Swain does not reflect the seriousness of Swain's offense conduct, which included a broader and more prolonged conspiracy to distribute a much larger quantity of narcotics.

Swain also contends that a 180-month sentence more closely aligns with the 1:1 crack-powder ratio approved by the Department of Justice and some other district courts. See [D.E. 161] 7 & n.3. The court rejects this benchmark. "[T]he proper 'benchmark' for the district court's analysis . . . is the impact of the Fair Sentencing Act on the defendant's Guidelines range." Smith, 75 F.4th at 465 (quotation omitted); see Troy, 64 F.4th at 184. Retroactive application of the Fair Sentencing Act does not reflect a 1:1 crack-powder ratio. See U.S.S.G. § 2D1.1(c) (2011).

7

Likewise, the current guidelines do not reflect a 1:1 crack-powder ratio. See U.S.S.G. § 2D1.1(c) (2021). This court recognizes its discretion to use a 1:1 crack-powder ratio. See Kimbrough v. United States, 552 U.S. 85, 91 (2007). This court, however, agrees with the 18:1 ratio and declines to use a 1:1 crack-powder ratio. Likewise, to the extent that Swain believes that the court should use the drug quantity table in the 2021 Guidelines Manual as a basis to reduce his sentence to 180 months, the court rejects the argument as unpersuasive in light of the section 3553(a) factors.

Swain argues that a 180-month sentence would reduce "unwarranted sentencing disparities" between Swain, Swain's supplier Jerrold Heckstall, and Heckstall's supplier Thomas Ray Johnson. [D.E. 161] 7–8. Heckstall and Johnson, however, are not similarly situated to Swain. Heckstall and Johnson both actively and immediately provided substantial assistance to the government and received substantial assistance motions at sentencing. See United States v. Heckstall, No. 4:07-CR-19 (E.D.N.C. June 16, 2008), [D.E. 37]; United States v. Johnson, No. 4:06-CR-52 (E.D.N.C. Jan. 16, 2007), [D.E. 30]. Swain did not receive a substantial assistance motion. Accordingly, there is nothing unwarranted between the sentences that Heckstall and Johnson received as compared to Swain. The court rejects Heckstall and Johnson's sentences as benchmarks for Swain's sentence. See, e.g., United States v. Gillespie, 27 F.4th 934, 939–40, 945 (4th Cir. 2022); United States v. Vinson, 852 F.3d 333, 358 (4th Cir. 2017); United States v. Perez-Pena, 453 F.3d 236, 243 (4th Cir. 2006).

Swain cites some positive steps that he has taken while incarcerated on his federal sentence. See [D.E. 161] 8–10. The court credits Swain for his positive behavior. On balance, however, Swain's record while federally incarcerated is decidedly mixed. Swain has been sanctioned for failing to follow safety regulations in 2009, possessing unauthorized items in 2016, using marijuana and suboxone in 2016, and extorting/blackmail/protecting in 2019. See [D.E. 161-5]; [D.E. 140] 2.

8

Swain's record has gotten worse since this court denied relief in 2021. Since May 2022, Swain has been sanctioned four more times. The sanctions include: (1) possessing gambling paraphernalia; (2) being unsanitary or untidy; (3) possessing an unauthorized item; and (4) possessing stolen property. See [D.E. 161-5]. Although Swain is appealing the 2022 sanctions, Swain's post-sentencing disciplinary record reflects disrespect for the law and a continued failure to abide by prison rules. See Smith, 75 F.4th at 467 & n.4; cf. Concepcion, 142 S. Ct. at 2396, 2402 n.6; Pepper, 562 U.S. at 491–94; Chambers, 956 F.3d at 671–75. Swain's prison misconduct does not inspire confidence in his alleged rehabilitation or in his alleged commitment to live a law abiding life.

Swain cites his age, his completion of RDAP, and his FSA Recidivism Risk Assessment and contends that he presents a low risk of recidivism and deserves a 180-month sentence. See [D.E. 161] 10–11; [D.E. 161-7]. The court declines to use the cited evidence to draw the statistical inference Swain seeks. Swain engaged in egregious criminal conduct, has a lengthy criminal history, and routinely violates terms of supervision and prison rules. See PSR ¶¶ 14–24; [D.E. 161-5]. Swain's individual history outweighs any inference that the court might draw from Swain's age, his completion of RDAP, and the BOP's risk assessment tool. See, e.g., United States v. Gibson, 636 F. App'x 134, 139–40 (4th Cir. 2015) (unpublished); United States v. McCoy, No. 3:14cr044-2, 2020 WL 5371463, at *6 n.4 (E.D. Va. Sept. 8, 2020) (unpublished).

The court has considered the First Step Act's remedial purpose in reducing Swain's sentence. See Swain, 49 F.4th at 403. The court has attempted to "adequately explain" its decision in this order. Id. at 404 (quotation omitted); cf. Concepcion, 142 S. Ct. at 2404 ("It is well established that a district court must generally consider the parties' nonfrivolous arguments before it. Of course, a district court is not required to be persuaded by every argument parties make, and it may, in its discretion, dismiss arguments that it does not find compelling without a detailed explanation. Nor

9

is a district court required to articulate anything more than a brief statement of reasons." (citations omitted)). In light of Swain's egregious criminal conduct, serious criminal record, poor performance on supervision, continued misconduct while incarcerated, the need to promote respect for the law, the need to deter others, the need to provide just punishment, and the need to incapacitate Swain, the court finds that a sentence of 288 months' imprisonment is sufficient but not greater than necessary. See, e.g., 18 U.S.C. § 3553(a); Concepcion, 142 S. Ct. at 2402–05; Chavez-Mesa, 138 S. Ct. at 1966–68; Pepper, 562 U.S. at 490–93; Smith, 75 F.4th at 464–69; Troy, 64 F.4th at 184–87; Chambers, 956 F.3d at 671–75.

In reaching this decision, the court has considered the entire record, Swain's arguments, and the section 3553(a) factors. Even if the court miscalculated the new advisory guideline range, however, and the advisory guideline range is 210 to 262 months' imprisonment, the court would impose the same sentence of 288 months' imprisonment as an alternative upward variant sentence in light of the entire record and the section 3553(a) factors discussed in this order. See 18 U.S.C. § 3553(a); United States v. Gomez-Jimenez, 750 F.3d 370, 382–86 (4th Cir. 2014); United States v. Hargrove, 701 F.3d 156, 161–65 (4th Cir. 2012).

II.

In sum, the court GRANTS defendant's motions for reduction of sentence [D.E. 128, 136] and reduces defendant's sentence to 288 months' imprisonment. All other aspects of the judgment remain the same.

SO ORDERED. This 29 day of September 2023.

JAMES C. DEVER III
United States District Judge

10

Case 4:07-cr-00062-D   Document 165   Filed 09/29/23   Page 10 of 10